Argued January 30, decided March 3, 1908.

## STATE v. SEELEY.

*[94 Pac. 37.]

RIOT—INTENT—HOW PROVEN.

1. In a prosecution for riot, it is not necessary that the common purpose
of the rioter should be established by positive proof, but such purpose and
intent may be inferred and formed from the circumstances and acts
committed.

SAME—DEFENSES—ARREST WITHOUT WARRANT.

2. Where the evidence in a prosecution for riot shows that defendant, on
an attempt being made by an officer, without a warrant, to arrest him,
retreated, taking the officer with him to the back room of a saloon, and that
two assistants of the officer came into the front room of the saloon, and were
pushed back by friends of the defendant, which resulted in a free fight, and
that defendant broke away from the officer and went to the assistance of his
friends; a contention was made that defendant was not acting without
authority of law in resisting an arrest made without a warrant, and hence
was not liable for riot under Section 1913, B. & C. Comp., providing that
any use of force by three or more persons acting together without authority
of law, is riot, is untenable.

SAME—JUROR—DISQUALIFICATION.

3. A juror is not disqualified to sit in the trial of a defendant who is
charged with riot, on account of having served as a juror in the trial of one
who was indicted and tried for the crime of murder in killing the city marshal
during the alleged riot, there being nothing in the record to show that the
testimony on the two trials was the same, or that any thing developed in the
former trial, which would disqualify the juror from sitting in the present
trial.

From Marion: GEORGE H. BURNETT, Judge.

Defendant James R. Seeley was convicted of riot, and from the judgment and sentence which followed, he appeals.                                        AFFIRMED.

For appellant there was a brief over the names of *Mr. Dan R. Murphy* and *Mr. Webster Holmes,* with an oral argument by *Mr. Murphy.*

For the State there was a brief over the names of *Mr. John H. McNary,* District Attorney, and *Mr. Charles L. McNary,* Deputy, with an oral argument by *Charles L. McNary.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

The defendant, Seeley, was jointly indicted with Warren Eastman, Fred Bastrin, and William Murphy, for the crime of riot committed in the town of St. Paul, in Marion county, on the 11th day of September, 1906. Seeley was tried separately and convicted. From a judgment sentencing him to the penitentiary, he appeals, contending that the judgment is not warranted by the evidence, and that the court erred in overruling his motion for a directed verdict.

The facts are these: In the summer of 1906 Seeley and his codefendants Eastman and Bastrin came to St. Paul to assist in harvesting and caring for the hops growing in that vicinity. On the morning of the 11th of September they were paid for their work and immediately proceeded to St. Paul, where they became intoxicated. Bastrin soon thereafter disappeared, and was not seen again until 7 o'clock in the evening, but Seeley and Eastman, with a crowd of eight or ten other persons, remained about town, conducting themselves in a boisterous, disorderly, and riotous manner, terrorizing the citizens generally, and in the afternoon committed an unprovoked and unjustified assault upon one Marcel Raymond. Mr. Krechter, the marshal of the town, re-

peatedly remonstrated with, and attempted to persuade them to desist from their riotous and unlawful conduct, but without avail.  He was either present at the assault upon Raymond or appeared upon the scene very soon thereafter, and was told by the mayor of the town that he must put a stop to such conduct, and was directed by him to secure the services of as many men as he needed and arrest Seeley.  Thereupon the marshal called upon Lambert to assist him in arresting Seeley.  Soon after the assault on Raymond, Seeley retired to the hotel to sleep, and the marshal and Lambert were unable to find him until about 7 o'clock in the evening, when he re-appeared in the saloon of his codefendant Murphy.  In the meantime the marshall had secured the services of two other persons to assist in making the arrest.  As soon as Seeley was located in the saloon the marshal stationed Lambert and the other two men on the porch of the building across the street, while he waited by the saloon door to arrest Seeley when he came out.  In a few minutes he appeared, and the marshal attempted to arrest him, but Seeley, being much the stronger man, retreated to the saloon, taking the officer with him. They passed through the front or barroom into a back room where Seeley was remonstrating with the marshal against the arrest, when Lambert and his associates entered the front door of the saloon, Lambert being in the lead.  As soon as they appeared, Eastman, who was behind the bar, ran around the rear of it and approached Lambert in a threatening manner, when he was told that they were not after him but Seeley.  Nevertheless he kept pushing and crowding Lambert back.  About this time defendant Bastrin appeared at the door of a room opening into the barroom with a pistol in his hand, and pointed it at Lambert in a threatening manner, as if he was going to shoot.  About this time a shot was fired, probably by Lambert, and a general conflict ensued.  Seeley was in the back room and not in sight of

the parties engaged in the conflict, but as soon as the difficulty commenced he broke away from the officer, ran behind the bar, armed himself with a bottle in one hand and a cuspidor in the other, jumped over the bar, and assaulted Lambert and his associates in a violent manner. During the trouble twelve or fourteen shots were fired, the marshal killed, Bastrin and a bystander shot, and Lambert and his associates beaten and bruised.

1. The statute provides that "any use of force or violence, or any threat to use force or violence, if accompanied by immediate power of execution, by three or more persons acting together, and without authority of law, is riot": Section 1913, B. & C Comp. And it is not necessary that there should be direct and positive proof of a common purpose, or that the persons engaged in the riot should determine beforehand upon doing an unlawful act. The purpose and intent may be implied from the conduct and acts of the parties: *State* v. *Mizis,* 48 Or. 165 (85 Pac. 611: 86 Pac. 361).

2. That there was sufficient evidence tending to show that the use of force and violence by Seeley, Bastrin, and Eastman, acting together, cannot be questioned; but the contention of the defense is that they were not acting without authority of law, because they were resisting an attempt of the marshal to arrest Seeley without a warrant. A peace officer may, without a warrant, arrest a person "(1) for a crime committed or attempted in his presence; (2) when the person arrested has committed a felony, although not in his presence; (3) when a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it": Section 1611, B. &. C. Comp. An attempt to make an arrest without a warrant under other circumstances is unlawful and may be resisted, but no more force can be used than is necessary to prevent the arrest: *State* v. *Evans,* 84 Am. St. Rep. 700, note. But we do not understand how this question becomes material here. The

acts for which defendant was indicted and convicted
were not in resisting an arrest, but as a voluntary par-
ticipant in an affray between Lambert and his associates
and Eastman and Bastrin. At the time the difficulty
commenced, the defendant was in the back room of the
saloon with the marshal, but he escaped from the officer,
hurriedly ran into the front room, and actively engaged
in the fight there taking place. It is perhaps true the
endeavor to arrest him was the inciting cause of the
difficulty, as Lambert and his associates would otherwise
probably not have been in the saloon. It was, however,
not due to a lawful attempt to resist such arrest, but to
the threatened assault on Lambert and his associates by
Bastrin and Eastman. As soon as they entered the
saloon they were attacked in a threatening manner by
these two men, and a difficulty ensued between them in
which Seeley subsequently participated. In legal effect
the case is as if Lambert and his associates had been as-
saulted by Eastman and Bastrin before they entered the
room and Seeley ran out of the building and joined in
the affray. It follows, therefore, that the authority or
want of authority of the marshal to arrest Seeley is
immaterial, so far as the case under consideration is
concerned, and the instructions of the court to the jury
on that question, even if erroneous, were not injurious.

3. The defendant Bastrin was indicted and tried for
the crime of murder in killing the marshal during the
alleged riot. Geo. E. Shaw was a juror in such trial.
He was permitted by the court to sit as one of the jurors
in the subsequent trial of Seeley for riot. This is as-
signed as error. The fact that Shaw served as juror in
the trial of Bastrin for murder did not necessarily dis-
qualify him from sitting in the trial of the present de-
fendant for riot: *Commonwealth* v. *Toth,* 145 Pa. 308
(22 Atl. 157). And there is nothing in the record to
show that the testimony on the two trials was the same,
or that anything developed in the trial of Bastrin, which

would disqualify the juror from sitting in the present trial. The examination of the juror on his *voir dire* indicated that he could try the case fairly and impartially, and that he entertained no opinion as to the merits which would disqualify him.

The action of the trial court in overruling the challenge for cause should not be disturbed. Judgment affirmed.                                    AFFIRMED.